**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ANGEL PEREZ,

                Plaintiff,

-vs-                                        **Case No. 6:06-CV-1648-ORL-19KRS**

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Angel Perez, seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits.  Doc. No. 1.  The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA).  Doc. Nos. 10, 11.   The case has been referred to me for issuance of a report and recommendation.  The parties have filed memoranda of law in support of their positions.  Doc. Nos. 17, 18.  Accordingly, the case is now ripe for review.

I.      PROCEDURAL  HISTORY.

In March 2003, Perez applied for disability benefits under the Federal Old Age,

Survivors and Disability Insurance Programs (OASDI), 42 U.S.C. § 401 *et seq.*, and

under the Supplemental Security Income for the Aged, Blind and Disabled Program

(SSI), 42 U.S.C. § 1381, *et seq.* (sometimes referred to herein as the Act).  R. 61-63.[1]

He alleged that he became disabled on February 8, 2003.  *Id*.  Perez's applications were

denied initially and on reconsideration. R. 46-49, 55-57.

Perez made a timely request for a hearing before an administrative law judge

(ALJ).  R. 58.  An ALJ held a hearing on January 26, 2006.  Perez, represented by an

attorney, testified at the hearing through use of a Spanish interpreter.  Richard Hickey, a

vocational expert (VE), also testified.  R. 369-95.

After considering the testimony and the medical evidence presented, the ALJ

determined that Perez was insured under OASDI through December 31, 2008.  R. 15.

The ALJ found that Perez had not engaged in substantial gainful activity at any time

relevant to the decision. *Id.*

The ALJ concluded that the medical evidence showed that Perez had coronary

artery disease, diabetes mellitus, depression and drug abuse, which were severe

impairments.  R. 15.  These impairments did not meet or equal any of the impairments

_____

[1] The SSI application is not in the record before the Court.

listed in the applicable social security regulations (the Listings).[2]  R. 16.

The ALJ found that Perez had the residual functional capacity (RFC) to perform a range of light work.[3]  R. 17.  The ALJ determined that Perez's mental impairment would result in mild restrictions of daily living and social functioning and moderate deficiencies in concentration, persistence and pace.  R.  16.  Accordingly, the ALJ concluded that Perez  would be limited to simple, unskilled work that does not require strong English language skills.  R. 18.    He also must avoid concentrated exposure to hazards and pulmonary irritants.  R. 18.

Perez's past relevant work as a cabinet maker required a medium level of work. Therefore, the ALJ concluded that Perez could not return to this work.  R. 18.  Perez did not have any transferable job skills.  R. 18.  The ALJ found that Perez had a GED and basic conversation skills in the English language and that, on the alleged disability onset date, he was closely approaching advanced age, *see* 20 C.F.R. §§ 404.1563, 416.963. R. 18.

---

[2]  The Code of Federal Regulations "contains a Listing of Impairments specifying almost every sort of medical problem ('impairment') from which a person can suffer, sorted into general categories." *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

[3]  Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567, 20 C.F.R. § 416.967.

In reliance on the testimony of the VE, the ALJ determined that there was unskilled light work available in the national economy that Perez could perform despite his functional limitations.  R. 18-19.  Therefore, the ALJ concluded that Perez was not disabled.  R. 19.

Perez requested review of the ALJ's decision.  R. 9.  On August 23, 2006, the Appeals Council issued a decision finding no basis to review the ALJ's decision.  R. 5-7.  Perez timely sought review of this decision by this Court.  Doc. No. 1.

## II.    JURISDICTION.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Perez's request for review.  *See Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); 20 C.F.R. §§ 404.981, 416.1481.  Therefore, the Court has jurisdiction pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

## III.    STATEMENT OF FACTS.

The evidence is adequately summarized in the ALJ's decision and the parties' memorandum.  To protect the claimant's privacy, only pertinent parts of the evidence will be reviewed in this report.

Perez testified that he completed school in Puerto Rico through the ninth grade, but he indicated in a written report that he had attended school through the twelfth grade. R. 84, 374.  He could read and write in Spanish, but he could speak only a little English and could not read English.  R. 374, 383.  He could not do mathematical calculations.  R. 374-75.

Perez worked as a cabinet maker for 32 years, from 1971 through January or February 2003.    R. 79, 376, 382, 384.[4] That job required a medium level of exertion.  R. 384.

Perez was 50 years old at the alleged onset of his disability.  R. 181.  Medical records establish that Perez has right coronary artery disease, for which he had emergency bypass surgery in February 2003.  R. 137.  He also had diabetes mellitus, which was reported to be uncontrolled in March 2003, with peripheral neuropathy and hypertension.  R. 142, 147.  Additionally, he also suffered from chronic obstructive pulmonary disease (COPD).  R. 147.

In May 2003, Perez was again hospitalized due to unstable angina.  He was treated with medication, after which his condition improved.  R. 208.  However, he reported shortness of breath (dyspnea) on exertion.  R. 262.  In June 2003, he was diagnosed with severe obstructive sleep apnea, and prescribed a CPAP machine.  R. 236-37.  On July 29, 2003, Karuna Ahuja, M.D., opined that Perez was responding well to medication from a pulmonary point of view.  Dr. Ahuja urged Perez to return to work.  R. 258.

Perez complained of shortness of breath and daily chest discomfort.  R. 103-04.  In a report dated October 2003, Perez indicated that his depression had worsened, resulting in mood swings, anxiety and panic attacks, and forgetfulness.  He also had rapid heart palpitations.  He was fatigued, dizzy, and had pain in his joints and legs and

---

[4] Earnings reports reflect that Perez worked in 1968, 1969 and 1970, but the type of work performed is not indicated.  R. 67, 76.

numbness of both hands and feet.  He dropped objects that he tried to carry.  R. 105-08,

112.  In November 2003, Perez reported that he had sleep apnea, chest pain,

headaches, and shoulder, lung and upper thigh pain.  R. 111.

In October 2003, Elek J. Ludvigh, Ph.D., examined Perez.  He conducted his

interview in English and noted that Perez had "acceptable conversational English skills."

R. 272.  Dr. Ludvigh's report reflects that Perez reported numbness and weakness in his

hands.  R. 273.  He was also sad, but Dr. Ludvigh concluded that Perez was not clinically

depressed.  His primary problem, in Dr. Ludvigh's view, was alcohol dependence.  R.

274.

Dr. Ludvigh examined Perez again in January 2004.  He noted that Perez's

depressive symptoms had worsened substantially.  R. 357.  His diagnosis was major

depression, single episode, moderate and alcohol dependence, in partial remission.  R.

358.  He opined that Perez's condition would cause the following:

> feelings of hopelessness, fatigue, emotional negativity, pessimism, slowed
> physical performance, irritability, reduced self-esteem, and heightened
> distractibility.  He will have difficulty in effectively focusing upon work
> activities and his mind will tend to wander to critical, suspicious, anxious,
> suicidal, or other depressive thoughts.  This will cause him to appear
> distracted, temperamental, moody, and/or unconcerned with many basic
> life and vocational activities.

R. 358.

A progress note from the Volusia County Health Services dated January 8, 2004,

reflects that Perez complained of numbness in his hands and feet.  On examination, the

treating professional observed that Perez could not distinguish sharp or dull stimuli on

the dorsal side of his feet and hands, but that he had good sensation in his fingers and

toes.  R. 347.  The diagnosis was diabetic neuropathy.  R. 349. An ARNP indicated that

Perez should not work for three months, but she encouraged Perez to diet and exercise. R. 349.

At the time of the ALJ's hearing, Perez was using a CPAP machine to help him sleep.  He had pain from diabetic neuropathy, and chest pain.  R. 377.  He had difficulty holding on to objects.  R. 380.[5]  He was forgetful due to depression.  R. 381.

The ALJ asked the VE to assume an individual closely approaching advanced age, with a GED and Perez's prior work history, with the limitations described by Perez during the hearing.  The VE opined that the individual might be able to perform some unskilled jobs requiring a light level of exertion.  R. 385.

The ALJ then asked the VE to assume the same individual who could perform light level work but who could not work in an environment with excessive dust, fumes, or pulmonary irritants.  The individual would be limited to simple routine repetitive work that required only rudimentary English speaking skills.  With these limitations, the VE opined that the individual could perform light unskilled work such as a photocopy machine operator, microfilm camera operator, or microfilm mounter.  R. 385-87.  The individual could also work as an odd piece checker in the garment industry.  R. 387.

The VE testified that the microfilm camera operator and microfilm mounter jobs did not permit a sit/stand option.  R. 389-90.  So, if Perez could sit for only one-half hour at a time, he could not perform these jobs.  R. 390.  Each job that the VE identified also required the use of hands and fingers.  R. 392.

_____

[5] Portions of the transcript of the ALJ's hearing are inaudible.  Neither party raised this as an issue requiring remand.

## IV.   STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI or SSI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).  A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D). In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits.  42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits.  In sum, an ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (4) Is the claimant unable to perform his or her former occupation?
>
> (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  An affirmative answer to any of the above

questions leads to either the next question, or, on steps three and five, to a finding of

disability.  A negative answer leads to a finding of "not disabled."  *See, e.g.*, *McDaniel v.*

*Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1987).

"The burden is primarily on the claimant to prove that he is disabled, and therefore

entitled to receive Social Security disability benefits."  *Doughty v. Apfel*, 245 F.3d 1274,

1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  However, "the burden

temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence

that there is other work available in significant numbers in the national economy that the

claimant has the capacity to perform."  *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d

1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether

the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395

F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal

standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence.  42

U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210.  "Substantial evidence is more than a scintilla,

and must do more than create a suspicion of the existence of the fact to be established.

It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir.

1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence

favorable as well as unfavorable to the [SSA's] decision."  *Chester v. Bowen*, 792 F.2d

129, 131 (11th Cir. 1986).  Where the SSA's decision is supported by substantial

evidence, the court will affirm, even if the court finds that the proof preponderates against the decision.  *Dyer*, 395 F.3d at 1210.  The court may not reweigh the evidence or substitute its own judgment.  *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law.  *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

## V.   ANALYSIS.

Perez asserts that the ALJ failed to consider the functional limitations arising from his mental impairment and diabetic neuropathy in combination with his other impairments.  He contends, also, that the ALJ erred in failing to consider 20 C.F.R. §§ 404.1562, 416.962, commonly referred to as the "worn-out worker rule." These are the only issues I will address.[6]

---

[6] The parties were advised that issues not specifically raised would be waived. Doc. No. 12.

*A.      The ALJ Adequately Considered Perez's Impairments in Combination.*

Perez asserts that the ALJ erred by failing to address specifically Dr. Ludvigh's

January 2004 findings that Perez suffered from depression. Doc. No. 17 at 9.  However,

"there is no rigid requirement that the ALJ specifically refer to every piece of evidence in

his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not

enough to enable [the district court or this Court] to conclude that [the ALJ] considered

[the petitioner's] condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.

2005)(quoting *Foote v. Chater*, 67 F.3d 1553,1561 (11th Cir. 1995)).

The ALJ's decision does not support the argument that he failed to consider the

functional limitations arising from Perez's depression.  Although the ALJ did not refer to

the January 2004 report specifically, he credited the finding that Perez suffered from a

severe depressive disorder. R. 15.  He concluded that this mental impairment would

result in moderate deficiencies in concentration, persistence or pace, but that this would

not prevent Perez from doing simple work.  R. 16.  He incorporated the functional

limitation arising from depression in his hypothetical question to the VE, which limited the

work to be performed to routine simple repetitive tasks.  Therefore, the record reflects

that the ALJ considered the functional limitations arising from Perez's mental

impairments and appropriately included those limitations when determining whether

there was work Perez could perform at step five of the sequential evaluation.

Perez also contends that the ALJ failed to consider that he had problems with his

hands and feet due to diabetic neuropathy.  Doc. No. 17 at 10.  The ALJ considered this

argument during the hearing, but testimony was not developed that Perez would be

limited in fingering and manual dexterity.

The record reflects that, at most,[7] Perez had difficulty grasping and holding

objects due to numbness in his hands.  The audible portion of the VE's testimony does

not reflect that the VE concluded that Perez could not perform the jobs identified if he

was unable to grasp and hold objects.  Perez cites to no other evidence in the record or

other authorities supporting his argument that inability to grasp and hold objects would

preclude him from performing the unskilled light work identified by the VE.  Accordingly,

the record reflects that the ALJ did consider the functional limitations arising from

diabetic neuropathy, and substantial evidence supports the ALJ's conclusion that these

limitations would not preclude Perez from performing work available in the national

economy.[8]

> B.     The Evidence Does Not Establish that Perez Falls Within the
>        "Worn-Out Worker Rule."

OASDI and SSI regulations provide that if a claimant has no more than a marginal

education and work experience of 35 years or more during which he did only arduous

unskilled physical labor which the claimant could not longer perform due to a severe

impairment, then the Commissioner would consider the worker disabled.  *See* 20 C.F.R.

§§ 404.1562, 416.962.  Perez contends that the ALJ erred by failing to find that he was

---

[7] A treating professional found, after examination, that Perez had numbness in the back (dorsal side) of his hands and feet, but not in his fingers and toes.  R. 347.

[8] In his memorandum of law, Perez also suggests that he would be limited to sitting or standing for one-half hour at a time, which would prevent him from performing the work identified by the VE.  Doc. No. 17 at 10.  Perez does not clearly indicate what impairment prevents him from sitting or standing for extended periods, and he does not cite to medical evidence in the record supporting such a restriction.  Therefore, substantial evidence supports the ALJ's conclusion that Perez could perform work that did not provide a sit/stand option.

disabled pursuant to these regulations.[9]

The record reflects that Perez worked for 32 years, from 1971 through 2003. He argues that earnings reports reflect that he also worked in 1968, 1969 and 1970, but these reports do not establish that the work he performed in these years involved arduous physical labor. As such, Perez did not establish that he had 35 or more years of work experience involving arduous unskilled physical labor as is necessary for the worn-out worker regulations to apply. As such, the ALJ did not err as a matter of law by failing to consider these regulations.

## VI.    RECOMMENDATION.

For the reasons stated herein, I respectfully recommend that the decision of the Commissioner be **AFFIRMED**. I further recommend that the Court direct the Clerk of Court to enter judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within **ten (10) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended this 31st day of December, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge
Courtroom Deputy Clerk
Counsel of Record

---

[9] Perez did not raise this argument in the administrative proceedings.